Today's cases will be called as previously announced and times will be as allotted to council. The first case is number 181774, United States v. Orlando Davila-Bonilla. Mr. Davila, oh, Ms. Davila, I'm sorry. I'm sorry, I'm looking at the wrong slide. Ms. Hale, good morning. Good morning, Your Honor. Please, go ahead. May it please the Court. Jessica Earle from the Federal Public Defender's Office. On behalf of Mr. Davila-Bonilla, may I reserve three minutes for rebuttal? You may. In this case, the Court is asked to ratify the District Court's fundamental misunderstanding of probable cause. The District Court increased my client's sentence by nearly a year based on an erroneous understanding of this most basic principle of criminal law. This was procedural error and requires remand. In pronouncing sentence, the District Court glossed over mitigating factors presented not only by defense counsel but specifically outlined in the pre-sentence investigation report and went instead straight to a recital of dismissed State Court domestic violence cases over objections from defense. The record is clear. The basis for the upward variance were these domestic violence incidences that the District Court equated with conviction or, at the least, guilty conduct. Didn't he more or less admit to them on two occasions? Your Honor, those admissions were made in the Probation Office and, yes, there were admissions in the PSR that were not objected to by defense. What difference does it make that they were made in the Probation Office? Well, I think, Your Honor, when we compare previous cases that this Court has contemplated admissions in buttressing dismissed State Court conduct, admissions were also coupled with other events that took place. For example, in Rodriguez-Reyes or in the Miranda case, there were also admissions by a defendant. But those admissions were made in a very different context than Mr. Davila's admissions and those defendants made admissions that were coupled with other substantive proof on the record that could be contemplated in considering dismissed Court conduct. But, I mean, but given his behavior towards the Probation Officer and the alleged threats that he made to her, given his statements about his prior domestic violence episodes and his bragging about having spent time in jail for them, I mean, why isn't that sufficiently reliable for the District Court to consider it? Your Honor, I would submit to the Court that those admissions are not reliable for multiple reasons. First, these were made by a man who was ranting in probation in a decomposed mental state, who was under the influence of narcotics, who even said things in his own admissions that aren't true. For example, he said, well, I've been in jail seven times, six for domestic violence. That's not a true statement. He has not been in jail seven times, much less six being for domestic violence. So I think that while we can look to the admissions, the Court is not prohibited from looking at them, they need to be looked at with a wary eye. Because if that's the only evidence that there is for that indicia of reliability that needs to be found to buttress dismissed State Court conduct, I think it falls far short of other admissions and other cases that have been given. For example... Suppose the admissions were treated as being reliable. Would they be sufficient to create indicia reliability? I would submit that they are not. That would be a question of first impression before this Court, because in the other cases in which there were admissions alone, excuse me, in which there were admissions, as I mentioned, the most recent cases, Rodriguez and Miranda, were coupled with other proof on the record that substantiated what the person, what the defendant said in his admissions. For example, in the Rodriguez-Reyes case, which was determined to be a variance, that defendant made admissions and they were corroborated by uncontested facts in the PSR about his own drug use by his defense counsel's own sentencing memo about his drug use and prior drug cases. And then the District Court used other factors to justify the variance, not just admissions and dismissed conduct in Rodriguez-Reyes. In Miranda, a more recent case, there were admissions by the defendant himself under advice of counsel in his PSR interview, in a much different setting than Mr. Davila made his admissions, about his prior record. And those were coupled with admitting things to ATF agents upon his arrest. It was coupled with actual conduct he pled guilty to that was later dismissed for reasons like a drug diversion program. If I recall correctly, the government argues here that the complaints in the other cases were based on essentially declarations or affidavits. One, is that correct? And two, does that make it reliable? Again, yes. The government makes two arguments to say that the dismissed state court conduct is reliable. First is the admissions by Mr. Davila, which I've addressed. And second is that they argue that these are criminal complaints where a probable cause finding was made at the state court level and therefore they are more reliable than, for example, an arrest record because they are judicial documents filed under oath. And they cite the Jones case from the Sixth Circuit in support of this contention. But first of all, Jones is not binding on this court. And the Jones decision does not go nearly as far as the government urges it to go. Jones was a very narrow decision, which said that the court can consider dismissed state court conduct in the ACCA context in determining whether it was a one single event or multiple events. Our submission to the court is Mr. Davila is far from that situation in an ACCA context. He's with dismissed state court cases. And it's important to note that in Puerto Rico, when you get to the criminal complaint stage, that is signed by a prosecutor. And the local rule allows a prosecutor to sign a criminal complaint upon information or belief that the events occurred. So it's not based on someone with personal knowledge of the events. It's signed by a prosecutor. And I think that that one-sided version of events is subject to – it's not something that the defendant has any opportunity to fight, such as like a deposition would be if we were before the court in that sort of situation. It's important to note with Jones, in the Jones case that the government so urges the court follow as these judicial documents under oath being reliable, the Sixth Circuit clarified its decision in Jones in a following opinion in the Bernal case where it said reliance on dismissed complaints to guess the nature of a conviction would be error. So they said in the Jones case we allowed it because it was determination of ACCA. And the Jones defendant pled guilty to those state court cases. They were just trying to determine, you know, whether he qualified for ACCA. But they clarified that in saying if you consider dismissed conduct in the following case was for an enhancement of COV, a crime of violence, to assume that they actually committed the underlying conduct would have been error. So to cite Jones, I think it does not go nearly as far as the government urges. So I think those two – If we agree with you that perhaps it was inappropriate to rely upon the complaints, you're still left with these admissions, which if we deem them reliable enough, what does that leave your argument? So then we would go to the second half of my argument. Let's say that this court determines it was improper for the judge to consider the dismissed court conduct. Then it's determined, are his admissions alone sufficient to justify the upward variance that was imposed in this case? And we submit that it's not. Here, as I mentioned initially, the judge glossed over all other mitigating factors. And when he pronounced sentence, he focused solely on the dismissed state court cases, which he meticulously read into the record. And then used those state court cases to justify the admissions made. Those were the only two reasons that he explained when he said that he was going to impose an upward variance. He gave no other indication of any other reasons, such as recidivism, dangerousness. I mean, he listed the 35 3A factors in boilerplate language. But the thing he most focused on were the cases and the allegations made. So without the cases, I think, are those admissions alone enough to justify the upward variance that was imposed in this case? And we think that improper weight was given to them, especially for the reasons I explained earlier, such as the mental health conditions, the drug abuse. The context that these threats occurred is also important for the court to take into consideration. Is the fact that there is so much similarity between the rank allegations and the complaints and his complained of behavior towards the probation officer sufficient to make his admissions more reliable? You're arguing that we shouldn't look at them. But does the totality of circumstances surrounding all of that at least make his admissions more reliable, such that the court could take that into consideration? We're not saying the court is forbidden from taking these into consideration. We're saying what happened in pronouncing sentence in this case was procedural error. It's important when you read the transcript of the district court's pronouncement of sentence, he doesn't use the admissions to buttress the dismissed state court conduct. He uses the state court conduct to buttress the nature and circumstances of the offense. He actually goes in the opposite way. He uses the dismissed state court conduct basically to try and prove what happened in the admissions made. So I think that without those state court conduct cases, is it enough to justify the variance? And I think the improper weight was given by the district court. You haven't said anything about waiver. Are you going to cover anything about waiver? No, Your Honor. We understand that by entering an unconditional guilty plea, if you're mentioning the venue issue, that that issue is waived. We would just point out for the court that a reading of the R&R in that case and coupled with everything that happened in this case shows the court that this district court judge took this case personally and how he felt about what happened in this case. I'm not sure I understand your answer. Do you waive the issue about waiver? Yes, Your Honor. By entering this court's precedent stands that by entering an unconditional guilty plea, he cannot argue the change of venue on it. All right. Thank you. You still have a minute and 20 seconds. Could you just, did you ever get to, and I'll ask the prosecutor also, but did you ever get to the bottom of how the criminal complaints got to the court in the first place? You noted in your brief that you were surprised that the complaints were going to be used in this fashion. You knew that something was amiss, but you didn't know what until the day of sentence. Right, Your Honor. I can't personally prefer as to what happens there. I did not sit the sentencing hearing myself, though I was co-counsel on the case. But all we would point on is to the procedural background, Your Honor, as to how those documents came before the court, is to show the importance that the district court placed on those dismissed state court conduct cases. So much so that he still responded, continued a sentence in order to get the English translations that he knew he'd need in order to hang his hat on the issue. And then the government submitting them the night before sentencing. So I think that points to an additional factor is the reason for the variance was dismissed state court conduct. And this court has to determine can we set precedent saying that a judge can rely on dismissed state court conduct in the way he did in this particular case to justify the upward variance. And the procedural background of the sentencing hearing, may I finish my thought? Go ahead. Indicates to the court how much weight he put on these domestic violence dismissed cases. And, again, I repeat, when you review a transcript of the sentencing hearing, he did not mention really anything other than those instances. And that shows the weight they were given, the undue weight they were given when you balance all the 3553A factors. Thank you. Thank you. Mr. Gottfried, good morning. Good morning, Your Honor. May it please the court, Jonathan Gottfried on behalf of the United States. Good morning. Good morning. Could you answer my last question? Regarding how the documents got into the record? Yes. Yes, Your Honor. There were communications between the deputy clerk, the U.S. Attorney's Office, and the U.S. Probation Office regarding the submission of English language translations of prior arrests that were mentioned in the PSR. Those conversations grew out of this court's repeated statements that it wants a more complete record on appeal. Regardless of whether or not the United States relies upon sentencing documents before at the sentencing hearing, it's come to pass that on appeal or perhaps the defendant or perhaps the judge relies upon sentencing documents. If those documents are not in English, that becomes a problem on appeal. And then if the case is remanded, this court has made clear that the government does not have the opportunity to submit English language translations. So there were conversations between the deputy clerk, the U.S. Attorney's Office, and the Probation Office as to who, frankly, should bear the cost out of whose budget it should come to submit those English language translations. Eventually, I decided to submit those English language translations. I conveyed that. I don't know if it was to the Probation Office or to the deputy clerk. The judge then issued an order. So did the Probation Office have the Spanish language versions of the complaint? I don't know if they had the original Spanish language versions or not. I know that they, in the PSR, referenced. I mean, you're putting it forth as a translation problem. Yes. I mean, obviously, the appellant here is putting it forth as something other than that, not strictly translation. But whose idea was it to present these to the court in the first place with the suggestion that it was the judge who, sui sponte, ordered these translated documents? I don't know if it came from the Probation Office or the deputy clerk asking for English language translations of these documents. Either the deputy clerk or the U.S. Probation Office asked for English language translations. I can assure the court that, first of all, there were no communications directly with the judge, and there were no substantive communications regarding the sentence, regarding any outcome of this case. The communications were purely limited to the administrative matter of who would provide English language translations for certain documents. In addition, they were not limited to providing English language translations of just the domestic violence. As the court will note in the record, the government provided English language translations of the three domestic violence issues as well as a marijuana conviction and a destruction of evidence charge. So we tried to include, as much as possible, English language translations of the prior arrests mentioned in the PSR. Your Honor, I do want to correct a statement or reference a statement that was made regarding the complaints. What we're calling the complaints, what are in Spanish, the acusaciones. You can call it a complaint, an accusation, an indictment, but I want to be clear about what it is. And the parties seem to be in agreement in the briefs, but I'm hearing something slightly different during oral argument. In particular, the appellant's brief at 23, page 23, note four says, quote, a criminal complaints in Spanish is called a denuncia and following a preliminary hearing, the charging document is called an accusation. The government was in agreement with that characterization and their brief at page 19, note six, the formal charging documents provided by the government revealed each case involved in accusation, which admitted by Davila would be filed after a preliminary hearing and probable cause found by the local court. To be clear, these are not documents that are submitted based upon the affidavit of a prosecutor. And we can see that actually in the record, if you look at the acusaciones in the appendix, I'll refer to just one at page 119, you will actually see a list of prosecution witnesses at the bottom of the page. And this was not included in our briefs, but because it's coming up for the first time on appeal, I simply will refer to one case if the court wants, we can submit a 28J letter, but it's just Rosado versus Rosado Cancel, which this court decided in 2019, where it said preliminary hearings are adversarial and public and both sides have the right to introduce evidence. So I just want that to be clear, what we're dealing with here is not a one-sided. I think it would be good if you submitted a 28J. Absolutely, Your Honor, we will do that. And the other side, of course, to respond to that. Of course. But even probable causes, just whether there's probable cause to charge. Yes, Your Honor. And so the question becomes, is there evidence in the record to move the quantum of proof from probable cause to beyond preponderance of the evidence? And I would submit that there is evidence in spades here more than we had in Rodriguez-Reyes. Briefly, Your Honor, there are five pieces of corroborating evidence in the record. First of all. You better let the judge continue. I'm sorry, Your Honor. Just pin down when you say corroborating evidence. You need to be clear as to what you're corroborating. Corroborating the statements made in the accusations, Your Honor. So you're trying to show us that the charging documents were sufficiently reliable. Yes, Your Honor. That's what you're doing right now. Yes. The first thing is that Davila told his probation officer on May 13, 2016, that, quote, he had just gotten into a heated argument with his girlfriend and that it blew out of proportion. He stated that he might have hit her in the back and told her to leave. He was crying as he told his officer what had occurred. This is in the government sentencing memorandum, document number 56 at page 6. That is a cut and paste from what are called the Cronus notes, the probation officer's notes, which were provided to both parties long before the sentencing hearing. The defense cites portions of the Cronus notes in their sentencing memorandum. The government cited portions of the Cronus notes from our sentencing memorandum. So this is a statement from the defendant to the probation officer on May 13, 2016, that he was involved in domestic violence. One of the complaints that the judge relied upon, one of the accusations was domestic violence for that incident of May 13, 2016. First piece of corroborating evidence goes directly to the accusation that the judge relied upon. Second piece of corroborating evidence. So is it, is it your theory that we, that the facts of this case are unique in that we have charging, but we also have evidence that buttresses the reliability of the information. I think that's consistent with what happened in Rodriguez-Reyes as well, Your Honor. You had facts. Suppose you just had the charging documents. In Rodriguez-Reyes? No, here. Suppose you just had the documents and the defendant had had sense enough to shut up. I think, Your Honor, that would be a different case. And that is, that is certainly not the government's argument here that the judge just relied upon the charging documents or that necessarily was sufficient here. Our argument is that there, this is not a case of. Would there be error if the judge relied just on the charging documents? I think if there, if the, you had an instance where there were undisputed statements, a description of the offense conduct that was not disputed. It was in the PSR. It was not disputed by the defendant. I think there was an argument to be made that that may be sufficient for preponderance of the evidence. Again, that is not our argument here and we don't have to rely upon that because there is ample evidence outside of the PSR as well as within the PSR to corroborate it. Well, suppose, suppose all the admissions were just in general terms rather than directed to any specific incident. Then, Your Honor. Would that be sufficient? I think this Court has already ruled upon that in Rodriguez-Reyes. In Rodriguez-Reyes, what we had were charging documents that charged possession of controlled substances on particular dates. What the PSR had were statements by the defendant that he had engaged in decades of substance abuse. The Court held that that general statement regarding criminal conduct was enough to corroborate specific instances. Even though, as far as I read, Rodriguez-Reyes, there was no statement by defendant that he used the drugs on that particular date. Just a general statement that he engaged in that kind of criminal conduct. So, I believe that issue has been ruled on by this Court, Your Honor. If I may, the second piece of property evidence we have occurs on the date of the offense, on July 27, 2017, where, and this is in the PSR, paragraph 15, the defendant was, quote, bragging about his prior domestic violence offenses and about beating a woman with a fire extinguisher. That is corroborated, in turn, by, again, going back to the Cronus notes, document number 56 at page 4. Mr. Davila tells a probation officer, quote, that he had been in jail seven times, of which six were for domestic violence cases, because, he has stated before, he enjoyed beating up women. And I want to emphasize that causal relationship here. He's not saying that he's been in prison seven times, of which six were for domestic violence, because he's a wrongly accused man. He says he's been in prison six times for domestic violence, because he enjoyed beating up women. Okay, so again, this is a statement directly to the probation officer that goes outside of the four corners of the accusation. We have a fourth piece of property evidence. Again, on July 27, 2017, to another probation officer. The defendant brags about his multiple domestic violence convictions, stating that he loved beating women. Again, to another probation officer, drawing that causal connection between the violations and his, and the offense conduct. That conversation is in turn corroborated by yet a third person, an employee in the probation office, and that's paragraph 17 of the PSR, who says that she overhears the defendant say that. There's also a fifth piece of corroborating evidence that comes from defense counsel herself, and that is in the objections to the PSR. It's included in the sealed appendix. It's also document number 54 at page 28. And briefly the context. Defense counsel is arguing that the threats were not directed specifically at the victims because of their governmental position. And what she says is, quote, Mr. Davila has had a long history of mental illness and other problems involving lack of respect towards others, not limited to only government employees. Mr. Davila's personal history instructs that this threat could have been made to a lay person that just bothered him, unquote. So this is defense counsel's own submission to the court, indicating that Mr. Davila has a long history of lack of respect towards others, not limited to government employees. And the government's position is that when you take all five of those pieces of corroborating evidence, that is more than enough to move that quantum of proof from probable cause to preponderance of the evidence. And I also want to point out here that it would be incorrect to characterize the district court as simply relying or placing blind faith in the accusations. Because actually we don't have just domestic violence accusations here. Those are the minority of the complaints that we have. In the arrest record, as well as the documents that the government submitted, we also have controlled substance offense. We also have three charges for destruction of evidence. We also have a charge for resisting arrest. Notably, although those are in the PSR, and although the judge could have relied upon at least some of those because the government provided translations, he did not. In other words, the judge here limited his reliance upon the charging documents to those charging documents that were corroborated by other offense conduct. In addition, if you look at the structure of the judge's argument,  his history of domestic violence offenses. Then he provides those three instances of offense conduct. And then he bookends that discussion by, again, going back to the fact that the defendant bragged about his history of domestic violence offenses. So what we can see here is that the judge is bookending his discussion of the offense conduct with the corroborating offenses. Also, just to briefly go back to Marrero-Perez, that is easily distinguishable from this case, Your Honors, because it just involved arrest. There was no description of the underlying conduct in the PSR. There was certainly no corroboration. I also want to point out that there is a discussion here as to whether arrests are less reliable than charged conduct. In the context of Marrero-Perez, we're looking at the departure guidelines. And the departure guidelines do make the distinction that Your Honor is mentioning. It says in particular in the section mentioned by or quoted by Marrero-Perez, it says, quote, a prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement in the context of departures. That same statement says prior criminal, prior similar adult criminal conduct not resulting in a criminal conviction can be considered if it's reliable for purposes of a departure. Would that be true to invariant situations that you can't rely just on an arrest? The court, this court in Rodriguez-Reyes, suggested that it may be possible under limited circumstances just to rely upon a lengthy arrest record because it may go to recidivism. Again, that is not the issue presented before this court with this case. The touchstone of it all is reliability. Yes, Your Honor. Is it sufficiently reliable? Is it sufficiently reliable based upon the district court's evaluation of the factual record? And here, given the defendant's repeated statements, not just the day of the offense, years before to another probation officer, his multiple statements to various probation officers as well as I think that the, it's clear that the district court's decision was amply supported. Unless the court has any further questions, I'll rest. Thank you. Thank you. Yes, Your Honor. I just want to quickly run through a couple of points that the government made. First, Your Honor asked a question that if just the accusations or criminal complaints or whatever we want to call them were included in the PSR, would that be enough? And I want to point out, it's important in Mr. Davila's case, that these arrests were listed in the PSR.   PSR. No underlying facts were included in the PSR. It was date of arrest, date of dismissal, what the charge was, just a numeric charge and why it was dismissed, which is rule 64. No other information was given. So there was nothing for Mr. Davila to dispute until the night before sentencing leading up into the morning of sentencing. So it's important to note that, again, what we have here are the admissions to say that, well, if these had been included in the PSR, in Mr. Davila's case, no underlying facts as to his 2007 and 2016 domestic violence incidences were ever included in the PSR. I'm sorry. My question really doesn't deal with that. But what evidence is there that when he made those statements, he was not doing so voluntarily and without influence of drugs or something else? Is it in the record? Yes, there is a record. He admitted to the probation officers and then was corroborated by them that he was under the use of synthetic marijuana. In sentencing hearing, defense counsel attempted to explain to the district court the differences between marijuana and synthetic marijuana and the effects it can have on the user, such as erratic and aggressive behavior. And not only that, there was the psychologist's report. He was getting court ordered from a prior revocation, psychiatric and psychological treatment, and she followed up and submitted his diagnosis and what had been going on in treatment right after his arrest in his case, which was bipolar disorder, multisubstance abuse and dependence, and an aggressive behavior. So, yes, I think the record is ample that he was suffering some serious issues apart from, you know, how he was feeling at that moment and the way he reacted. I want to also address, the government says he... No, no. And he apologized to the probation officer during his allocution, Your Honor. We just point that out to the court that when we made our original argument, admissions by any criminal defendant, particularly in this case, should always be looked at with an air of caution. And particularly for this defendant, given his history, we submit to the court that these admissions alone, which is all there is on the record, despite the government's argument to the contrary, is not enough under either Marrero, Rodriguez, or Miranda. I only have about 15 minutes. I'm sorry. And hopefully Chief Judge Tuvalu will give you a little bit more time. I'm still trying to figure out how did these lengthy recitations of the facts of these charges, who introduced them? The judge, the procedural background that I am aware of, Your Honor, is as follows. Sentencing by this particular district court is always made at the change of plea hearing. And the sentence was set for months ahead of time. Then approximately a week before sentencing, the judge enters a one-line order, saying sentencing is continued to next week because the English language documents are not ready, or the English state court documents, period. There's no order as to who's to prepare them, what's to be done. It's just that's all it says. Then we are a week going the next following week, and the night before sentencing, the government files the motion submitting certified English translations. That's how it came. When the judge asked, he never mentioned the documents during defense counsel's arguments at sentencing. When she finishes and before the government begins, he says, defense counsel, before the government begins, I just want to make sure, did you receive a copy of the documents submitted last night? Defense counsel says, I did, and I have some concern over what the court intends to do with them in this case. However, since nothing's been mentioned yet, I'll wait and see what happens when we get there. And then when the judge goes through and detail reads them, she makes her procedural objection. And what I mentioned earlier about the PSR, these arrests are listed in one-liners. There's no underlying facts about what happened during these arrests or these criminal complaints, whatever you want to define them as, until we get to the night before sentencing. So that's, from a defense point of view, how the documents became before the court. Well, are you contending that there was inadequate notice of the government's intent to rely on this? No, and the defense counsel did not request a continuance during the sentencing hearing. And we're not submitting to this court that a district court could never look at those documents. Again, to refer back to my earlier argument, I think the procedural background is important for this court to know because it shows the importance that the court wanted to give these documents in justifying its variance. But generally, I mean, since the burden is on the government at sentencing... Yes. ...and show the reliability of... Usually it's the government that moves for the introduction of certain things. Correct. And so did the government ever move for the introduction of this? No, and that brings up an important point. The government filed its sentencing memo a week prior to the sentencing along with defense counsel. And in the sentencing memo, the government asks for a guideline sentence. The government never mentions the dismissed state court conduct other than briefly mentioning a federal revocation, which was the basis on the 2016 event, which was later determined not to even revoke Mr. Davila due to complete lack of evidence, I think, was that separate federal court's decision. So a week prior, the government is asking for a guideline sentence. They're not discussing dismissed state court conduct, and it's not until the sentencing hearing. And in the government's argument at sentence, it again asks for a guideline sentence. And it's very careful not to mention the state court documents throughout. It focuses on the facts. It focuses on Mr. Davila's drug addiction, and it focuses on the probation officer's attempts to help him throughout the past years. And that's really the government's argument. It's not until the judge pronounces sentence that he himself begins to go through these dismissed cases. And that's really the key in this case because the question before the court is, all these other issues that are before the district court, whether considered mitigating or aggravating, are ignored. And the hat is hung on dismissed state court conduct to justify an upward variance. And if Your Honor's permitting, I would just like to make one quick point about the substantive reasonableness here along those lines. The question before the court is, apart from the procedural error we submit was committed by the district court, is what happened in Mr. Davila's case outside the heartland of what the guidelines contemplated? And we submit it is not. You have a poor, uneducated, mentally ill man from a violent upbringing, a violent public housing project, who was called in the day before to submit a drug sample, which he complied with. Then he's called in the day after to submit another drug sampling. And occurs what happens and he has this outburst. He had to go around the public housing project and beg for money in order to get to San Juan to submit his sample again. It doesn't excuse his outburst, but we want to put into context what happened in this case. This is an outburst that occurred over a period of minutes. And he's doing 66 months when combined with his revocation for this criminal behavior. And when you compare to other cases under 18 U.S.C. 115, it just doesn't justify the upward variance, much less when it's based solely on the dismissed state court conduct. So we think that this was well within the heartland of the guidelines, and therefore the judge's sentence was substantively unreasonable as well. Thank you. Thank you.